IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNN LIETZ, individually and on behalf of all other similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 1:20-cv-3207 |
| v. | ) ) |
| SNAP-ON, INCORPORATED, SNAP-ON TOOLS COMPANY, LLC, | ) ) ) |
| Defendants. | ) ) |

### CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Lynn Lietz, individually and on behalf of all others similarly situated, by and through counsel, brings this class and collective action lawsuit against Defendants Snap-On, Incorporated and Snap-On Tools Company, LLC ("Defendants" or "Snap-On") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts, and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Plaintiff brings this action to redress Defendants' violations of the FLSA and IMWL by knowingly suffering or permitting certain full-time, hourly employees to perform approximately 10 to 25 minutes of off-the-clock pre- and post-shift work each day without paying any wages for this work.

## PARTIES

2. Plaintiff Lynn Lietz is a natural person and a citizen of the State of Illinois. During the relevant time period, Plaintiff worked as an hourly, non-exempt customer service representative in one of Defendants' call centers and was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1) and IMWL, 820 ILCS 105/3(d). Plaintiff is personally familiar with, and was personally affected by, the policies and practices described in this Complaint. Plaintiff has completed and filed an opt-in consent form to join this action. (Exhibit A).

3. Defendant Snap-On, Incorporated is a Delaware corporation registered to do business in the State of Illinois. At all relevant times, Defendant Snap-On, Incorporated was an "employer" of Plaintiff as defined by the FLSA, 29 U.S.C. § 203(d) and IMWL, 820 ILCS 105/3(c).

4. Defendant Snap-On Tools Company, LLC is a Delaware limited liability company registered to do business in the State of Illinois. At all relevant times, Defendant Snap-On Tools Company, LLC was an "employer" of Plaintiff as defined by the FLSA, 29 U.S.C. § 203(d) and IMWL, 820 ILCS 105/3(c).

5. Defendants are covered by the FLSA because they are an "enterprise" under the FLSA, 29 U.S.C. § 203(s)(1)(A). Defendants have employees engaged in commerce and revenue that exceeds $500,000.00.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction." Plaintiff has signed an opt-in consent form to join this lawsuit. (Exhibit A).

7. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

8. This Court has supplemental jurisdiction over Plaintiff's IMWL claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business within this District and because a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this District.

## FACTUAL ALLEGATIONS

10. Defendants are designers, manufacturers, and marketers of high-end tools and equipment for professional use in the transportation industry including the automotive, heavy duty, equipment, marine, aviation, and railroad industries. Defendants operate customer service call centers throughout the State of Illinois.

11. Defendants employed Plaintiff and similarly situated employees as full-time, hourly, phone-based customer service representatives, all of whom have similar jobs that include answering customer phone calls on Defendants' phone system, conferring on Defendants' phone system with third-party freight trucking companies regarding shipment of tool boxes, using Defendants' computer system to access databases and create work orders, following-up with employees in other departments about work orders and completing paperwork relating to their customer calls and work orders.

12. All full-time, hourly, phone-based customer service representatives receive common training with respect to their work and the common policies underlying Plaintiff's claims.

13. All full-time, hourly, phone-based customer service representatives for Defendants have a similar daily work schedule that includes eight work hours, two 15-minute paid breaks, and a 30-minute unpaid meal break.

14. Defendants maintain a common policy requiring all full-time, hourly, phone-based customer service representatives to log-in to Defendants' phone system within one minute of their scheduled shift start-time, log-out of Defendants' phone system within one minute of their scheduled meal break start-time, log-in to Defendants' phone system within one minute of their scheduled meal break end time and log-out of Defendants' phone system within one minute of their scheduled shift end-time every day. Employees who do not consistently follow this policy are subject to counselling and disciplinary action up to and including termination.

15. Defendants maintain a common policy and practice providing that all full-time, hourly, phone-based customer sales representatives will be paid for all work hours tracked by Defendants' phone system which, because of the above policy, almost always is the same as their scheduled work hours.

16. Defendants maintain a common policy requiring all full-time, hourly, phone-based customer service representatives to answer one customer call after another, while simultaneously fielding text messages (which had to be responded to within three minutes) and emails (which hand to be responded to within one hour) from the minute their scheduled shift starts until their meal break begins and from the minute their meal break ends until the minute their shift ends. Compliance with this policy is encouraged through the above practice, the threat of counselling and disciplinary action, and the use of performance benchmarks that require all phone-based customer service representatives to handle a large volume of calls.

17. Defendants established the time and place of payment and rate of payment, and promised to pay Plaintiff and similarly situated employees an hourly rate of pay for all time worked on behalf of Defendants at their places of business as well as an overtime premium of time and one-half of her regular hourly rate for all time worked in excess of 40 hours per week.

**UNPAID PRE- AND POST-SHIFT WORK**

18. Defendants maintain common timekeeping and compensation policies and practices for all hourly-paid customer service representatives that include requiring Plaintiff and similarly situated employees to sign in on a telephone system at the beginning of each shift, and sign off the system at the end of each shift.

19. Consistent with the policies and practices described above, and with the knowledge and approval of their supervisors, all full-time, hourly, phone-based customer service representatives are required to spend approximately five to 15 minutes before their scheduled shift start-time each day performing job-related tasks that include: powering up the laptop; launching Outlook; printing the list of daily promotional items to sell to franchisees; launching Verint to access the daily schedule for breaks, lunches, research time, and potential meetings; launching SPEC, a program used for custom tool box orders; launching two other order entry programs, each of which contained an additional four to five programs used to find items, price, product description, warehouse availability, and to find orders and tracking numbers for shipments; launching resource guides, launching Internet Explorer and opening "favorite" websites such as Defendant's online catalog; opening the Agent Notes program, which contained unresolved work orders that had to be completed within 24 hours; launching the MASTIR application, which contained various links to other company information; opening the order modification system in

order to change or cancel existing orders; and launching the Touch Point application to log in and accept calls.

20. During her employment, Plaintiff arrived at her desk approximately five to 15 minutes before her shift start-time to perform the above-mentioned activities. During her employment, Plaintiff personally observed dozens of full-time, hourly, phone-based customer service representatives arrive at their desks approximately five to 15 minutes before their scheduled shift to power up their laptops, launch the required programs, and prepare for their day.

21. Consistent with the policies and practices described above, and with the knowledge and approval of their supervisors, full-time, hourly, phone-based customer service representatives routinely spend approximately five to 10 minutes after their scheduled shift end-time each day performing job-related tasks including closing out of each individual program listed above and powering down their laptops. If Plaintiff and similarly-situated employees did not close out of each individual program prior to powering down their laptops, Defendants would send them a "violation" email listing how many times each violation occurred.

22. During her employment, Plaintiff remained at her desk for approximately five to 10 minutes past her scheduled shift-end time to close out of each individual program opened during her shift and power down her laptop. During her employment, Plaintiff personally observed dozens of full-time, hourly, phone-based customer service representatives remain at their desks approximately five to 10 minutes after their scheduled shift to close out of programs and power down their laptops.

23. Plaintiff's supervisors, through their regular observation of Plaintiff and similarly-situated employees, regular interactions with Plaintiff and similarly-situated employees, and regular discussions with Plaintiff and similarly-situated employees, knew that Plaintiff and

similarly-situated employees spend approximately 10 to 25 minutes before and after their scheduled shift almost every day, but never freed them from performing pre- and post-shift work, required them to enter their pre-and post-shift work in Defendants' timekeeping system, or caused them to be paid any wages for their pre- and post-shift work.

24. Full-time, hourly, phone-based customer service representatives so regularly perform unpaid, off-the-clock pre- and post-shift work with their supervisors' knowledge and approval that it has become a *de facto* part of their required job duties.

25. If full-time, hourly, phone-based customer service representatives do not spend approximately 10 to 15 minutes performing the tasks described above before and after their scheduled shift each day, they cannot resolve their work orders, complete their required paperwork, or provide the customer services their jobs require, placing them at risk of counselling and disciplinary action up to and including termination.

26. Defendants paid Plaintiffs and similarly situated employees only for time while they were logged into the telephone system: employees were not paid for work performed before logging into the system or after logging off of the system.

27. During her employment, Plaintiff was regularly scheduled to work 40 hours per week answering phone calls, text messages, and emails from Defendants' customers and franchisees at Defendants' Customer Care Center in Crystal Lake, Illinois.

28. Upon information and belief, the amount of uncompensated time Plaintiff and similarly situated employees spent on unpaid work activities ranged from 10 to 25 minutes daily. As a result of working this uncompensated time, Plaintiff and similarly situated employees accrued time over 40 hours in the workweek for which they were not compensated at an overtime rate pursuant to state and federal law.

29. Defendants' failure to pay proper wages in a timely manner were made without good faith, willful, and with reckless disregard for Plaintiff's rights; and Plaintiff and similarly-situated employees have been damaged by such failures.

### **FLSA COLLECTIVE ACTION ALLEGATIONS**

30. Plaintiff brings her FLSA claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for herself and all people who have worked as full-time, hourly customer service representative for any Defendant in any workweek during the maximum limitations period (the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

31. Plaintiff belongs to the FLSA collective because she worked as an hourly paid customer service representative during the relevant period.

32. The FLSA Collective is "similarly situated," as is defined by 29 U.S.C. § 216(b) because its members worked under similar terms and conditions, in similar jobs, and were subjected to the same common, company-wide policies and practices described herein. Although Plaintiff and the FLSA Collective members worked in different locations, this action may be properly maintained as a collective action because, among other things:

   a. The FLSA Collective members had the same employer;

   b. The FLSA Collective members had similar job duties;

   c. The FLSA Collective members worked under similar terms and conditions of employment;

   d. The FLSA Collective members were governed by similar timekeeping policies, practices and systems;

   e. The FLSA Collective members were governed by similar compensation policies, practices and systems;

   f. The FLSA Collective members were governed by similar policies, practices and systems concerning work hours, pre-shift work, meal breaks, post-shift work, overtime hours and overtime wages;

  g.  The FLSA Collective members received similar training with respect to their work and Defendants' policies; and

  h.  The FLSA Collective members were required to meet similar performance benchmarks.

33. Plaintiff and the FLSA Collective do not meet any test for exemption under the FLSA.

34. Plaintiff estimates that the FLSA Collective, including both current and former employees over the relevant period, exceeds 100 members. The precise number of FLSA Collective members should be available from Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective group members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## ILLINOIS CLASS ACTION ALLEGATIONS

35. Plaintiff brings her IMWL claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 for herself and all Illinois residents who have worked as full-time, hourly customer service representative for any Defendant in any workweek during the maximum limitations period without receiving all overtime wages due for all of the overtime hours they worked (the "Illinois Class"). Plaintiff reserves the right to amend this definition as necessary.

36. Plaintiff is a member of the Illinois Class because she is an Illinois resident who worked as a full-time, hourly customer service representative for Defendants during the relevant period and did not receive all overtime wages due for all of the overtime hours she worked.

37. Class treatment of Plaintiff's IMWL claim is appropriate because the Illinois Class satisfies the requirements of Fed. R. Civ. P. 23.

38. The Illinois Class is so numerous that joinder of all its members would be impracticable. Defendants have over 100 employees who fit the Illinois Class definition, meaning that joining all of their claims would be impracticable.

39. Plaintiff's claims are typical of the claims belonging to the Illinois Class. Plaintiff is similarly-situated to the Illinois Class because she worked for Defendants under the common policies and procedures identified herein and was denied legally-required wages for her work as a result of Defendant's common course of wrongful conduct.

40. There are material questions of law or fact that are common to the members of the Illinois Class because, as discussed throughout this Complaint, Defendants engaged in a common course of conduct that violated the Illinois Class members' legal rights. The legality of Defendants' policies will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions Plaintiff's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

   a. Whether Plaintiff and the Illinois Class have been subjected to materially-identical timekeeping and compensation policies;

   b. Whether Defendants maintain policies or procedures to keep accurate, contemporaneous records of the hours worked by Plaintiff and the Illinois Class;

   c. Whether Defendants maintain policies or procedures to ensure that Plaintiff and the Illinois Class are properly paid for all hours they actually worked;

   d. Whether Defendants require Plaintiff and the Illinois Class to spend approximately five to 15 minutes logging in on a computer and initializing software programs;

   e. Whether Defendants require Plaintiff and the Illinois Class to spend approximately five to 10 minutes shutting down software programs and logging out of the computer;

   f. Whether Defendants denied Plaintiff and the Illinois Class overtime premium wages owed under the IMWL; and

   g. Whether Defendants should be required to pay compensatory damages, liquidated damages, and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

41. Plaintiff will fairly and adequately assert and protect the interests of the Illinois Class because: there is no apparent conflict of interest between Plaintiff and the Illinois Class; Plaintiff's counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Plaintiff has secured adequate financial resources to assure that the interests of the Illinois Class will not be harmed because her counsel have agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Ill. R. Prof. Conduct 1.8(e)(1).

42. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the Illinois Class predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

43. Allowing Plaintiff's IMWL claims to proceed as a class action will be superior to requiring the individual adjudication of each Illinois Class member's claim, since requiring several hundred hourly-paid employees to file and litigate individual wage claims will place an undue burden on the Illinois Class members, Defendants, and the Courts. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each Illinois Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims. Further, the presentation of separate actions by individual Illinois Class members could create a risk for inconsistent and

varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of the Illinois Class members to protect their interests.

44. Allowing Plaintiff's claims to proceed as a class action is also appropriate because Illinois wage laws expressly permit private class action lawsuits to recover unpaid wages.

## COUNT I
## VIOLATION OF THE FLSA
### Unpaid Overtime Wages

45. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

46. Defendant Snap-On, Incorporated is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d).

47. Defendant Snap-On Tools Company, LLC is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d).

48. Plaintiff and the FLSA Collective are "employees" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

49. The wages Defendants paid to Plaintiff and the FLSA Collective are "wages" as defined by the FLSA, 29 U.S.C. § 203(m).

50. Defendants are "enterprises engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

51. Section 216(b) of the FLSA expressly allows private plaintiffs to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

52. Throughout the relevant period, Defendants have been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective members have been covered

employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

53. Section 207(a)(1) of the FLSA requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

54. Defendants have intentionally violated this provision of the FLSA with respect to the FLSA Collective by maintaining common timekeeping and compensation policies and practices that include: failing to maintain accurate, contemporaneous records of the FLSA Collective members' work and requiring the FLSA Collective members to regularly spend approximately 10 to 25 minutes per day on unpaid work, thereby failing to pay them all wages owed, including overtime premium wages.

55. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for Plaintiff's and the FLSA Collective members' rights under the FLSA.

56. Plaintiff and the FLSA Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

57. For all the reasons stated above, Plaintiff and the FLSA Collective members are similarly situated within the meaning of the FLSA, 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE IMWL**
**<u>Unpaid Overtime Wages</u>**

58. Each of the preceding paragraphs is incorporated by reference as if fully set forth herein.

59. Defendant Snap-On, Incorporated is an "employer" as defined by the IMWL, 820 ILCS 105/3(c).

60. Defendant Snap-On Tools Company, LLC is an "employer" as defined by the IMWL, 820 ILCS 105/3(c).

61. Plaintiff is seeking to recover unpaid overtime wages under the IMWL.

62. Plaintiff and the Illinois Class are employees entitled to the IMWL's protections and, during the relevant period, were not exempt from receiving wages payable under the IMWL for any reason.

63. IMWL Section 4(a) requires employers to pay an employee overtime compensation of "not less than 1½ times the regular rate at which he is employed" for all hours worked over 40 in a given workweek. *See* 820 ILCS § 105(4a).

64. Under the IMWL, overtime is calculated based on the number of hours worked in a "workweek." *See* 820 ILCS § 105(4a).

65. Throughout the relevant period, Section 8 of the IMWL required Defendants to keep "true and accurate records of… the rate of pay, and the amount paid each pay period to each employee [and] the hours worked each day in each work week by each employee…." *See* 820 ILCS § 105/8.

66. The IMWL provides that any "contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void." *See* 820 ILCS § 105/2.

67. Defendants knowingly violated the IMWL by failing to make or maintain an accurate, contemporaneous record of the pre- and post-shift work Plaintiff and the Illinois Class members regularly performed.

68. Defendants knowingly violated the IMWL by regularly allowing Plaintiff and the Illinois Class members to perform approximately 10 to 15 minutes of off-the-clock pre- and post-shift work each day.

69. Defendants knowingly violated the IMWL by regularly failing to pay Plaintiff and the Illinois Class members any wages for their overtime-eligible pre- and post-shift work.

70. By engaging in this conduct, Defendants acted with willful and/or reckless disregard for Plaintiff's and the Illinois Class members' rights under the IMWL.

71. There is no language in the IMWL, no exception to the IMWL, or any applicable provision elsewhere in Illinois law that permits Defendants to avoid paying Plaintiff and the Illinois Class members for their overtime work, and Defendants have no good faith justification or defense for its failure to pay Plaintiff and the Illinois Class members all wages mandated by the IMWL.

72. Plaintiff and the Illinois Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court enter an Order:

a. Authorizing this matter to proceed as an FLSA Collective action with respect to Count I;

b. Certifying this matter to proceed as a Rule 23 class action with respect to Count II;

c. Appointing Stephan Zouras, LLP to serve as Class Counsel;

d. Requiring Defendants to provide the names and current (or best known) mailing and e-mail addresses of all FLSA Collective members;

e. Authorizing Class Counsel to issue a notice informing the FLSA class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

f. Finding that Defendants violated the applicable provisions of the FLSA by failing to pay all required overtime wages to Plaintiff and the FLSA Collective members;

g. Finding that Defendants willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to Plaintiff and the FLSA Collective members;

h. Finding that Defendants violated the applicable provisions of the IMWL by failing to pay all required wages to Plaintiff and the Illinois Class members;

i. Granting judgment in favor of Plaintiff and the FLSA Collective members on Count I;

j. Granting judgment in favor of Plaintiff and the Illinois Class members on Count II;

k. Awarding all available compensatory damages in an amount to be determined;

l. Awarding all available liquidated damages in an amount to be determined;

m. Awarding pre-judgment interest on all compensatory damages due;

n. Awarding reasonable attorneys' fees and reimbursement of all costs and expenses incurred in litigating this action;

o. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

p. Awarding any further relief the Court deems just, necessary, and proper;

q. Granting leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

r. Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in the above-captioned matter.

Date:   May 29, 2020                                                     Respectfully Submitted,

*/s/ Haley R. Jenkins*
Ryan F. Stephan
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
hjenkins@stephanzours.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**