**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LYNN LIETZ, individually and on behalf of all other similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **Case No. 1:20-cv-3207** |
| **v.** | ) ) | |
| | ) | **Hon. Sharon Johnson Coleman** |
| **SNAP-ON, INCORPORATED, SNAP-ON TOOLS COMPANY, LLC,** | ) ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT</u>**

**<u>INTRODUCTION</u>**

Plaintiff and Class Representative Lynn Lietz ("Plaintiff"), individually and on behalf of all others similarly situated ("Plaintiffs"), by and through counsel, moves for final approval of the Parties' settlement in the amount of $432,500.00 as consideration for Plaintiffs' claims that they were deprived of overtime wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* The Parties' settlement of this hybrid FLSA collective action and IMWL Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Ex. A, including the releases of claims as set forth therein; and (2) enter the Proposed Final Approval Order and Final Judgment, attached as Ex. B.

On June 10, 2022, the Court took the first step in the settlement approval process by preliminarily approving the Parties' class and collective action settlement; certifying the proposed

"Settlement Class" (defined below) pursuant to Rule 23 and the FLSA; appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing CPT Group, Inc. ("Settlement Administrator") as Settlement Administrator; appointing Named Plaintiff Lynn Lietz as Class Representative; directing that Class Counsel mail notice to the Class Members; and setting a date for the Final Approval Hearing. (ECF No. 81).

Class members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to participate in, object to, or opt out of settlement. Ex. C, Declaration of Jeremy Romero ("Admin. Decl.") ¶¶ 4, 7; *see also* Ex. A to Admin. Decl. (Settlement Notice). To date, no Class Members have objected, and five individuals have opted out of the settlement. Admin. Decl. ¶ 10; Ex. D, Declaration of Haley R. Jenkins ("Jenkins Decl.") ¶ 15 and Ex. 2 to Jenkins Decl. (Elections to Opt Out). With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement ("Preliminary Approval Motion") (ECF No. 74), Plaintiff Lynn Lietz filed the above-captioned class and collective action on May 29, 2020, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the Illinois Minimum Wage Law ("IMWL") 820 ILCS § 105, *et seq* (ECF No. 1). Specifically, Plaintiff alleged Defendants required her and other similarly situated call center employees to perform unpaid pre- and post-shift work when they logged into and out of computer programs necessary to do their jobs before and after each shift.

Plaintiff sought to represent herself and similarly situated call center workers as a collective action under the FLSA and a class action under the IMWL pursuant to Federal Rule of Civil Procedure 23. On February 15, 2022, the Parties participated in a settlement conference with

Magistrate Judge Cox. The settlement conference was unsuccessful, but the Parties continued negotiations and were able to reach an agreement in principle on March 22, 2022.

Over the course of the next two months, the Parties negotiated the remaining terms of the settlement, which were memorialized in the formal Settlement Agreement. *See* Ex. A. This settlement provides for substantial monetary relief for approximately 213 participating Class Members, inclusive of the Plaintiff. *Id.* ¶ 24. Defendants have denied and continue to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted by Plaintiff. Nonetheless, Defendants agreed to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

On May 24, 2022, the Parties filed the Preliminary Approval Motion requesting, among other relief, that the Court grant preliminary approval of the Settlement Agreement and certify an FLSA collective action and Rule 23 class for settlement purposes. (ECF No. 74). On June 10, 2022, the Court granted preliminary approval of the Parties' proposed settlement; certified the Settlement Class; appointed Stephan Zouras, LLP as Class Counsel; appointed the Named Plaintiff as Class Representative; directed that notice be mailed; and set a date for a final approval hearing. (ECF No. 81.) The Court amended the June 10, 2022 Order at the Parties' request on July 14, 2022, and reset the final approval hearing to October 19, 2022. (ECF No. 84.) The Court further amended the July 14, 2022 Order on September 9, 2022, resetting the objection/exclusion deadline to October 6, 2022. (ECF No. 91.)

## II. SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Plaintiff and Defendants. Jenkins Decl. ¶ 11.

### A. The Settlement Amount

As set forth in the attached Settlement Agreement, the Settlement Amount of $432,500.00 covers: (1) all approved attorneys' fees and costs in connection with Class Counsel's representation of the Plaintiff and Class Members; (2) all Administrative Fees incurred by the Settlement Administrator; (3) all payments to the 213 participating Class Members; and (4) service payments to the Class Representative ("Service Payments"). Settlement Agreement ¶ 23. Any unclaimed funds resulting from uncashed checks will remain with Defendants. *Id.* ¶ 49(g).

### B. Eligible Class Members

No action is required by Class Members to receive a settlement payment. Settlement Agreement ¶ 38. Named Plaintiff, Opt-In Plaintiffs, and, unless they opt-out, all individuals employed by Defendants as full-time hourly phone-based customer service representatives for Defendants at the Crystal Lake, Illinois call center during the period from May 29, 2017 to the date of Preliminary Approval ("Class Period"). Settlement Agreement ¶ 24.

### C. Releases

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Named Plaintiff and Class Members who have not validly and timely opted-out of the settlement will release all state, local, and common law wage and hour claims. Settlement Agreement ¶ 51. In addition, Class Members who timely negotiate their settlement checks will consent to join the collective action and release all wage and hour claims under the FLSA. *Id.*

### D. Allocation Formula

The distribution of the settlement funds is based on employee payroll data produced by Defendants. Settlement Agreement ¶ 36. The Settlement Administrator will allocate the Settlement Fund, less anticipated amounts for attorneys' fees and costs, Administrative Fees, and the Service Payment to the Plaintiff, among the Class Members based on each Class Member's individual workweeks and most recent hourly rate. *Id.* ¶ 35. The allocation method provides compensation

for 213 participating Class Members during a class period spanning five years and results in an average settlement distribution of approximately $1,228.29 per Class Member, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and service payments. Admin Decl. ¶ 13; Jenkins Decl. ¶¶ 12-13.

### E. Service Payments, Attorneys' Fees, and Settlement Administration Expenses

On August 5, 2022, Class Counsel applied for Court approval of, and Defendants did not oppose, distribution of a Service Payment to the Class Representative paid out of the Settlement Amount, of $7,500.00. (ECF No. 86.). In addition, Class Counsel petitioned the Court, unopposed, for approval of an award of attorneys' fees and costs of 35% of the Settlement Amount, in addition to $1,290.56 for reimbursement of reasonable litigation costs expended, and $11,000.00 as reimbursement for settlement administration expenses. *Id.* Class Counsel submits, and Defendants do not dispute, that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F. Settlement Administration

Between June 24, 2022 and July 20, 2022, the Settlement Administrator received the Class List containing information for 216 individuals. Admin Decl. ¶ 5. On August 22, 2022, the mailing addresses contained in the Class Lists were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* ¶ 6. On August 23, 2022, CPT Group mailed the Settlement Notice to 216 Class Members via First Class mail. *Id.* ¶ 7. After the Settlement Notices were mailed, the Settlement Administrator performed skip traces using Accurint on eight Settlement Notices returned by USPS with undeliverable addresses. *Id.* ¶ 8. Of the eight traces performed, six more current addresses were obtained and Settlement Notices were promptly re-mailed to those Class Members. *Id.* ¶ 9. The Notice Packet was forwarded to

four updated addresses provided by USPS. *Id.* The Settlement Administrator did not obtain updated addresses for two undeliverable Settlement Notices. *Id.* As of this date, two Settlement Notices remain undeliverable. *Id.*

### G. Objections and Opt-Outs

The deadline to object to or opt out of the settlement was October 6, 2022. (ECF No. 92.) This deadline has now passed. No Class Member objected and only five individuals requested exclusion from the settlement. *Id.*; *see also* Ex. 2 to Jenkins Decl. (Elections to Opt Out).

## III.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2) . *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. As set forth in Section II.F above, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B).

## IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D.

Ill. Feb. 28, 2012) . "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider four factors: (1) the adequacy of representation by class representatives and class counsel; (2) whether the settlement was negotiated fairly; (3) the adequacy of the relief provided to the class; and (4) whether class members were treated equitably relative to each other. Fed. R. Civ. P. 23 (e)(2); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). A court must view the settlement in its

entirely, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

Additionally, courts have construed the FLSA as requiring approval of a settlement that would release FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted).[1] When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted). All of these factors weigh in favor of final approval.

## A. The Class is Adequately Represented by the Class Representative and Class Counsel (First Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1975); *see also Isby*, 75 F.3d at 1200. Class Counsel are competent and experienced in class actions, particularly wage and hour class actions, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Jenkins Decl. ¶ 14. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments

---

[1] Likewise, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor).

about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. *Id.*

The Class Representative, Lynn Lietz, has demonstrated she qualifies as a "conscientious representative plaintiff." *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004). The Class Representative worked as a full-time hourly phone-based customer service representative for Defendants at the Crystal Lake, Illinois call center during the class period, and her claims are based on the same allegedly unlawful pay process as the rest of the proposed class. She has shown her commitment to vigorously prosecuting litigation by assisting Plaintiff's counsel in preparing the Complaint, sitting for a deposition, and actively participating in the settlement conference and settlement negotiations. The Class Representative has also provided invaluable information and documents, and otherwise assisted Class Counsel in understanding Plaintiff's claims and Defendants' defenses. Further, she has no interests that are antagonistic to the interests of the Class. *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 31-32 (E.D.N.Y. 2019). This factor therefore weighs in favor of final approval.

**B. The Settlement Was Negotiated Fairly (Second Factor).**

There is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Therefore, this Court should find that this factor supports final approval of the settlement.

### C. The Settlement Amount Adequately Provides Relief to the Classes (Third Factor).

Courts have held that the six factors identified in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014), subsume the considerations of the third factor under Rule 23(e)(2). *Snyder*, 2019 WL 2103379 at *5. Those factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *Wong*, 773 F.3d at 863.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks.

The Settlement Amount, as reflected in the attached Settlement Agreement, represents significant value for the 213 participating Class Members—an average sum of approximately $1,164.93 per individual, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment—particularly given the attendant risks of litigating the merits of the case through Rule 23 and FLSA class certification, summary judgment proceedings and/or trial, and any appeals of decisions on those matters. Jenkins Decl. ¶ 13.

In evaluating the strength of a plaintiff's case on the merits compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues that have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of

vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. Defendants maintain that they complied with the FLSA and did not require Plaintiff and other call center employees to work off-the-clock. Further, Defendants intended to oppose both Rule 23 and FLSA section 216(b) certification of this action. Thus, as in any complex action, the Plaintiff generally faces uncertainty on whether she will prevail on liability. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In light of these risks, the settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Class Counsel estimate that the settlement amount distributed directly to the Class Members represents approximately 50% of the Settlement Class's likely maximum potential claim for unpaid wages, exclusive of liquidated damages under the FLSA and damages of two to five percent per month under the IMWL. Jenkins Decl. ¶ 13. This is well within the range of reasonable recovery for the class and represents significant value given the attendant risks of litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long.

By reaching a favorable settlement prior to certification proceedings, dispositive motions, or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would certainly result in dozens of depositions, fully briefed motions for Rule 23 class and FLSA collective certification, decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. The proposed settlement, on the other hand, provides immediate benefits. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### 3. There Has Been No Opposition to the Settlement, and Competent Counsel for All Parties Endorse the Agreement.

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, no Class Members objected to the settlement and only five requested exclusion from the settlement. Admin Decl. ¶ 10; Jenkins Decl. ¶ 15; Ex. 2 to Jenkins Decl. (Elections to Opt Out).

In addition, the Class Representative supports the settlement, as do Class Counsel, as set forth above, and Defendants and their counsel. Thus, this factor also favors approval of the settlement.

### 4. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

This complex hybrid class and collective action was resolved approximately two years after it was initiated. This period involved research, analysis, investigation, the exchange of extensive payroll records and documentation applicable to the claims of Plaintiff and other putative class and collective action members, and the deposition of Plaintiff Lynn Lietz and Defendants' Rule 30(b)(6) corporate representative. *See* Jenkins Decl. ¶ 6. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. Jenkins Decl. ¶ 14. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this factor favors final approval of the settlement.

### D. Class Members Were Treated Equitably Relative To Each Other (Fourth Factor).

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent*

*Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

To determine an equitable distribution among competing claimants, the settlement funds are allocated to each Class Member based on each Class Member's individual workweeks and most recent hourly rate. Jenkins Decl. ¶¶ 11-12; Settlement Agreement ¶ 35. Thus, the proposed settlement ensures that the Class Members who wish to participate in the settlement will receive significant monetary relief. *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47 (finding *pro rata* distribution scheme sufficiently equitable). Further, the Agreement provided for an effective opt-out mechanism for class members to retain their federal and state wage and hour claims if they sought the opportunity to pursue an individual claim. *Id.* Accordingly, the factors all weigh in favor of final approval of the settlement and thus the settlement, on its face, is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1198, 1200.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Final Approval of Class and Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached as Ex. B.

Dated: October 12, 2022                    Respectfully Submitted,

                                           */s/ Haley R. Jenkins*

                                           **ONE OF PLAINTIFF'S ATTORNEYS**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on October 12, 2022, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*